# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 2178 - & 98 C 2550 | **DATE** | 3/29/2004 |
| **CASE TITLE** | Carnegie, et al. vs. Household International, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motion to dismiss plaintiff Carnegie's second amended complaint (834-1) is granted in part and denied in part. The motion as to Count II is denied with respect to the racketeering and conspiracy provisions of RICO, but granted as to the investment injury and enterprise control provisions. The motion as to Counts III, IV, V, and VIII is denied as moot. The certification of the class as to those claims is therefore withdrawn. The motion to dismiss Counts VI and VII is granted as to Block and denied as to Beneficial. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 20 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | MAR 3 0 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | 157 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 3/29/2004 date mailed notice | |
| MPJ | courtroom deputy's initials | U.S. DISTRICT COURT 2004 MAR 29 PM 4:05 Date/time received in central Clerk's Office | MPJ6 mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **LYNNE A. CARNEGIE**, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**HOUSEHOLD INTERNATIONAL, INC., HOUSEHOLD BANK**, f.s.b., successor in interest to **BENEFICIAL NATIONAL BANK, HOUSEHOLD TAX MASTERS INC.**, formerly known as **BENEFICIAL TAX MASTERS INC., BENEFICIAL FRANCHISE COMPANY, INC., H&R BLOCK, INC., H&R BLOCK SERVICES, INC., H&R BLOCK EASTERN TAX SERVICES, INC., BLOCK FINANCIAL CORP.**, and **HRB ROYALTY, INC.**,<br><br>Defendants. | No. 98 C 2178<br><br>DOCKETED<br>MAR 3 0 2004 |

### MEMORANDUM OPINION AND ORDER

In 1995, plaintiff Lynne A. Carnegie, a citizen of New York, responded to an advertisement and patronized an H&R Block store in New York. She purchased a refund anticipation loan ("RAL") and paid charges of $110 on a nine-day loan of $500. Ms. Carnegie alleges that she was duped into buying the RAL through a complex and illegal scheme involving various arms of H&R Block (collectively, "Block") and arms of its co-conspirator bank (collectively "Beneficial"). In brief, the scheme alleged is as follows. Block runs a tax preparation and advising service with numerous branches throughout the country. Block also performs electronic filing of

tax returns, which greatly speeds up the arrival of patrons' refund checks. Block made a bargain with Beneficial whereby Block would advertise and sell Beneficial's RALs to its customers. Block provided its customers with the loan documentation and even printed the check, but the funds came from Beneficial, and the obligation to repay via refund check was likewise to Beneficial. Block received a payment from Beneficial for each RAL customer it recruited.

This case, then titled *Zawikowski v. Beneficial, Reynolds v. Beneficial,* and *Turner v. Beneficial,* reached settlement. That settlement was approved by Judge Zagel, but remanded by the Seventh Circuit for further consideration. *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277 (7th Cir. 2002). I subsequently rejected the settlement and required that new counsel represent the class. *Reynolds v. Beneficial Nat'l Bank,* 260 F. Supp. 2d 680 (N.D. Ill. 2003). New counsel (objectors to the earlier settlement) filed a second amended complaint in which they substituted Ms. Carnegie as the only named plaintiff. The defendants now move to dismiss that complaint. The parties have also addressed class certification issues, with the defendants arguing that the class should be decertified.

On a motion to dismiss, I accept as true all well-pleaded facts in the complaint, and grant the motion only if the plaintiff can prove no set of facts to support his claim. *Strasburger v. Bd.*

*of Educ.*, 143 F.3d 351, 359 (7th Cir. 1998).[1] I deny the motion to dismiss Count II as to the racketeering and conspiracy provisions of RICO, but grant it as to the investment injury and enterprise control provisions. The motion to dismiss Counts III, IV, V, and VIII (consumer fraud, breach of fiduciary duty, subornation of breach of fiduciary duty, and unjust enrichment) is denied as moot; I withdraw certification of the class as to those claims. The motion to dismiss Counts VI and VII (breach of contract) is granted as to Block. I deny the motion to dismiss Count VI as to Beneficial. The motion to dismiss Count VII as to Beneficial is denied as moot; the plaintiff has voluntarily withdrawn that count.

I.

The defendants move to dismiss Count II, which alleges violations of four different provisions of the Racketeer Influenced and Corrupt Organizations act ("RICO"), 18 U.S.C. §§ 1961, 1962(a)-(d), *et seq.* (addressing investment injury, enterprise control, racketeering, and conspiracy, respectively). The defendants argue that this count fails to state a claim for numerous reasons, including lack of Fed. R. Civ. P. 9(b) particularity, failure to allege a RICO enterprise, failure to plead an investment injury, failure to plead an injury stemming from the defendants' acquisition or control of an enterprise, failure to plead that each

---

[1] In separate orders, I have dismissed Count I, alleging violations of the federal Truth in Lending Act ("TILA"), as to all of the defendants.

defendant conducted the affairs of the enterprise, failure to allege conspiracy, and failure to comply with the statute of limitations. Ms. Carnegie responds that each of these arguments either has no merit or is barred from consideration by judicial estoppel because Judge Zagel denied a motion to dismiss RICO claims earlier in the case. I find that the complaint adequately states a claim against all defendants under the racketeering and conspiracy provisions of RICO, but not under the investment injury or enterprise control provisions.[2]

The law of the case doctrine bars reconsideration of Judge Zagel's ruling in *Turner v. Beneficial*, No. 98 C 2550 (Mar. 30, 1999), which held that the plaintiff class adequately alleged a RICO enterprise, stated a claim under § 1962(c), the racketeering provision of RICO, and satisfied the heightened pleading requirements of Fed. R. Civ. P. 9(b). *See Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228 (7th Cir. 1988) (prior decisions in a case should not be overruled unless they strike the reviewing court as wrong "with the force of a five-week-old, unrefrigerated dead fish"). Although the named plaintiff in this case has changed since the time of that ruling, the plaintiff class and the central allegations of the claim have not. The Beneficial

---

[2] Block makes a perfunctory argument that Carnegie's RICO action is time-barred. She received her RAL in February, 1995. This action was filed in 1998, well within the four-year statute of limitations. The fact that Carnegie was not then the named class representative is irrelevant.

4

defendants are bound by that ruling. However, Block had been dismissed from this case at the time of Judge Zagel's ruling, and the RICO claim against Block must be evaluated on its merits.

Block argues that Count II fails to comply with the heightened pleading requirement of Fed. R. Civ. P. 9(b). The predicate acts that form the basis of Ms. Carnegie's RICO claim are acts of consumer fraud, and thus must be pleaded with particularity. This requirement "must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim," *Corley v. Rosewood Care Ctr.*, 142 F.3d 1041, 1051 (7th Cir. 1998). This case is unique in that not only has it been ongoing for over five years, but one of Block's counsel participated in drafting a previous complaint alleging violations of RICO. Under the circumstances of this case, Rule 9(b) is satisfied.

Turning to the other issues raised in the motion to dismiss, Block argues that Ms. Carnegie failed to allege a RICO enterprise, an element of her claim under § 1962(c). That provision addresses injuries to the plaintiff resulting directly from the defendants' predicate acts. *See Peterson v. H & R Block Tax Servs., Inc.*, 22 F. Supp. 2d 795, 802 (N.D. Ill. 1998) (in order to state a § 1962 claim, the plaintiff must allege that the defendants "(1) conducted (2) an enterprise through (3) a pattern (4) of racketeering activity"). A RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct."

*United States v. Turkette*, 452 U.S. 576, 583 (1981). An enterprise is shown by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id*. An enterprise must be more than simply a group of people who get together to commit crimes, or a group of associated businesses operated in concert; it must have structure and continuity, as well as "differentiation of the roles within it." *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645. However, an enterprise need not have the complexity of a corporation. "There must be some structure, to distinguish an enterprise from a mere conspiracy, but there need not be much." *Burdett v. Miller*, 957 F.2d 1375, 1379 (7th Cir. 1992).

This is exactly what Ms. Carnegie alleges. The complaint states that the Block defendants and the Beneficial defendants operated a scheme to defraud customers, distinct from the other ordinary business dealings each conducted, whereby Block would attract and mislead consumers into purchasing extremely expensive loans from Beneficial in exchange for a cut of the profits. The defendants' argument that mere contractual relations between entities cannot create a RICO enterprise is accurate, but misplaced. Ms. Carnegie does not rely solely on the contractual relationship between the parties to support her RICO claim. Rather, the contractual relationship is simply one fact among many which together constitute an adequate allegation of a RICO enterprise.

6

The Block defendants argue that Ms. Carnegie failed to adequately allege that each defendant conducted the affairs of the enterprise, an additional element crucial to a 1962(c) claim. *Goren*, 156 F.3d at 727. They base this argument on the fact that the complaint does not distinguish among the Block defendants, who are alleged to have operated the enterprise. This argument is unpersuasive. At the pleading stage, prior to discovery, a plaintiff cannot be expected to determine which of the various Block entities was in control of which aspects of the enterprise. It is sufficient to plead the acts complained of and attribute them to "H & R Block," even if the plaintiff does not know whether "H & R Block, Incorporated" or "H & R Block Services, Incorporated" was the entity technically in charge of the disputed transaction. Block cannot evade liability by hiding behind its multi-faced corporate identity.

Next, defendants argue that Ms. Carnegie has failed to plead an investment injury, an element of her claim under § 1962(a). This section covers injuries which are caused by the use or investment of racketeering income. Although the Seventh Circuit has yet to make a definitive ruling on the question, "the majority of circuits hold that the use or investment of the racketeering income must proximately cause the plaintiff's injury; injury caused by the predicate racketeering acts is inadequate." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 779, n.6 (7th Cir.

7

1994). Since *Vicom,* "each court in this district addressing the issue has adopted the majority use or investment rule." *Shapo v. O'Shaughnessy,* 246 F. Supp. 2d 935, 965 (N.D. Ill. 2002) (collecting cases). I agree with my colleagues that this interpretation is most faithful to the plain wording of the statute. *See, e.g., Rose v. Mony Life Ins. Co.,* 82 F. Supp. 2d 920, 923 (N.D. Ill. 2000). Thus, in order to state a claim under § 1962(a), Ms. Carnegie must allege an investment injury which can be distinguished from the injuries resulting from the predicate acts of fraud. *Id.* The complaint does not meet this standard. Ms. Carnegie alleges that the defendants used racketeering income "to acquire an interest in, establish, or operate the RAL enterprise ... which has caused injury to plaintiff." 2d Am. Compl. at 217. In other words, it is the enterprise, not the investment, which caused the alleged injury. The motion to dismiss is granted as to the alleged violations of § 1962(a).

The defendants argue next that Ms. Carnegie has failed adequately to plead injury stemming from enterprise control. Like § 1962(a), a claim relying on § 1962(b) must allege that the plaintiff's injury resulted from the defendants' acquisition or control of the RICO enterprise, rather than from the predicate acts. *Midwest Grinding Co., Inc. v. Spitz,* 716 F. Supp. 1087, 1091 (N.D. Ill. 1989) (comparing § 1962(a) and § 1962(b) and concluding that the same standard applies to both); *Roger Whitmore's Auto.*

*Servs., Inc. v. Lake County*, No 99-C2504, 2002 U.S. Dist. LEXIS 8289, at *30 (N.D. Ill. May 9, 2002) (citing *Midwest Grinding*). Here, Ms. Carnegie does not allege separate injury proximately caused by the defendants' ownership of the enterprise; the complaint states only that the defendants owned the enterprise and the enterprise harmed the plaintiffs. 2d Am. Compl. at 218. The motion to dismiss is granted as to the alleged violations of § 1962(b).

Finally, the defendants contend that Ms. Carnegie fails to plead a conspiracy under § 1962(d). That section covers conspiracy to violate provisions (a), (b), or (c) of § 1962. The defendants argue that the language in Count II is merely a "naked and insufficient legal conclusion" and does not satisfy the standard. While it is true that Count II itself does not contain detailed allegations, it incorporates the preceding paragraphs in the body of the complaint, which contain numerous explicit statements spelling out the who, what, and when of the alleged agreement between the Block defendants and the Beneficial defendants. 2d Am. Compl. at 47-64. These allegations, taken in sum, are more than enough to state a claim for conspiracy under § 1962(d).

The defendants argue for decertification of the plaintiff class as to the RICO count on the basis of *In the Matter of Bridgestone/Firestone, Inc.*, 333 F.3d 763 (7th Cir. 2003). Because a court in 1996 had refused to certify a RICO class alleging

similar claims against some of the defendants in this case, defendants say the class claims here are barred by collateral estoppel under *Bridgestone/Firestone*. *Buford v. H&R Block*, 168 F.R.D. 340, 364 (S.D. Ga. 1996), *aff'd.*, 117 F.3d 1433 (11th Cir. 1997). Defendants did not raise this argument in either the Seventh Circuit or this court at the time they were arguing for approval of the prior settlement.[3] Obviously, if the alternative to settlement was no class at all, the settlement would indeed be fair. Defendants have waived this defense by failing to raise it when the Seventh Circuit and this court were considering whether the settlement should be approved. In addition, defendants obtained definite benefits from the class certification in this case. During the period after approval of the class and settlement by the district court in 1999 and the time I rejected the settlement in 2003, defendants were able to enjoin numerous other actions on the basis of the class settlement. While those injunctions were ultimately vacated, defendants do not even argue that they obtained no benefit from the injunctions.

II.

The defendants move to dismiss Counts VI and VII, which allege two breach-of-contract theories against both sets of defendants.

---

[3] This is in contrast to the statute of limitations, which defendants consistently raised as a potential bar to some claims if the settlement was not approved.

The parties agree that the Delaware choice-of-law provision in the RAL documents governs claims for breach of those documents.

Judge Zagel has already twice denied motions to dismiss breach of contract claims against Beneficial substantially similar to Count VI. *Zawikowski v. Beneficial Nat'l Bank*, No. 98-C2178, 1999 U.S. Dist. LEXIS 514, at *11 (N.D. Ill. Jan. 11, 1999); *Turner*, No. 98-C2550 (Mar. 30, 1999). These rulings are the law of the case, and I will not revisit them now. Count VI against Beneficial withstands the motion to dismiss. Carnegie concedes that the actions complained of in Count VII were not barred by the agreement, and thus voluntarily withdraws Count VII as to Beneficial. Pl. Opp. to Ben. Def.'s Mot. to Dismiss, at 14.

Block argues that Ms. Carnegie cannot sustain a claim against it for breach of contract, as it was not a party to any RAL contract. In her opposition to the Block defendants' motion to dismiss, Carnegie relies on the following language to support her position that Block entered into a unilateral contract with its RAL customers:

> I hereby authorize and request H&R Block and its affiliates to disclose to Beneficial National Bank and its agents ("BNB") my federal income tax return for tax year 1994, any and all other information contained in such tax return, all information supplied to H&R Block, including IRS direct deposit information, in connection with the preparation of such tax return, and all other information contained in this form and any information contained in any of my prior RAL applications which was disclosed to H&R Block. I authorize and consent to the disclosure of the foregoing information for the purpose of enabling BNB to determine whether or not to make a Refund Anticipation Loan ("RAL") to me in response to any application

11

for such loan which is a part of this form ... H&R Block may not use or disclose such tax return information for any purpose ... other than as stated herein."

Pl.'s Corr. Opp. to Block Def. Mot. to Dismiss, at 14-15. The quoted language describes no obligation on Block's part whatsoever. According to this document, Block is authorized to reveal information under certain circumstances, but Block makes no promise, or even offer, to do so. I cannot see how Block can be in breach of an agreement wherein it did not promise to do anything. Ms. Carnegie cites to three Delaware cases which allegedly support the notion that this language could constitute a binding contract enforceable against Block, but none comes close to holding that authorizations like the quoted language can constitute an enforceable contract.[4]

I grant the motion to dismiss Counts VI and VII as to Block. I deny the motion to dismiss Count VI as to Beneficial. The motion to dismiss Count VII as to Beneficial is denied as moot, as that count has been voluntarily withdrawn.

---

[4] *Cont'l Ins. Co. v. Rutledge & Co.*, 750 A.2d 1219 (Del. Ch. 2000) is entirely inapposite; it concerns oral modifications of a partnership agreement. *Kysor Indus. Corp. v. Margaux, Inc.*, 674 A.2d 889 (Del. Super. Ct. 1996) enforced a unilateral contract against a party who had promised to pay a certain sum upon the occurrence of a triggering event. *Abbott v. Stephany Poultry Co.*, 62 A.2d 243 (De. Super. Ct. 1948) states that partial performance by a promisee may bind the promisor. None of these cases suggests that a non-promisor such as Block may be bound.

12

III.

The defendants move to dismiss Counts III, IV, V, and VIII on a number of grounds. I find that the multi-state legal analysis which would be required to resolve each of these claims presents an intractable class certification problem.[5]

The Seventh Circuit's prior acceptance of the certifiability of the class, discussed above, is binding on every point except the adequacy of the new named plaintiff (discussed in Section VI, below), adequacy of counsel and manageability, which is analyzed differently for settlement classes and litigation classes. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Where litigation classes are concerned, however, courts must give the manageability issue a "close look." *Id.* at 615-16. While all claims here present a management challenge simply due to the size of the class, the difficulties presented by the federal claims are surmountable. However, the four state-law claims discussed here present such unwieldy issues that a nationwide class action cannot be the most efficient method of resolving them.

---

[5] When I refer to "state-law claims," I am referring to these four counts. While Counts VI and VII for breach of contract are also based in state law, they are subject to the Delaware choice-of-law clause in the RAL agreement, and thus do not present the manageability problems of Counts III, IV, V, and VIII.

13

In her briefs, Ms. Carnegie makes conflicting arguments as to what law will apply to the four claims, arguing at various points for the law of Illinois, Delaware, and federal common law. None of arguments are persuasive. When deciding pendent claims based in state law, federal district courts apply the choice-of-law rules of the state where they sit. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). Illinois' choice-of-law doctrine applies the law of the state which has the most significant contacts with the dispute. *Ingersoll v. Klein*, 262 N.E.2d 593 (Ill. 1970). As the class members apparently reside in all fifty states, negotiated and entered into RAL agreements in all fifty states, and were allegedly injured in all fifty states, it cannot be that any one state had the most significant contacts with all those millions of disputes. This dispute's contacts with states of the defendants' incorporation or the forum state will not outweigh the much stronger contacts each RAL transaction had with the state where it was negotiated and entered into and where the class member was allegedly injured. *See In the Matter of Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1302 (7th Cir. 1995) (ordering the decertification of a 50-state class alleging a state-law negligence claim in part because the voices of the quasi-sovereign states "sing negligence with a different pitch," making it impossible for one jury to take into account the nuances of 50 applicable standards); *In the Matter of Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002).

Defending the manageability of the class, Ms. Carnegie argues that the defendants have not demonstrated substantial or confusing differences among the states in the law that would be applied to the class' claims. Ms. Carnegie misunderstands her task; it is *she* who bears the burden of demonstrating manageability and the absence of variability in state law. *See, e.g., In re Synthroid Mktg. Litig.*, 188 F.R.D. 287, 294 (N.D. Ill. 1999) ("The burden is on plaintiffs to demonstrate that a class is appropriate for certification ... The plaintiffs have not ... demonstrate[d] how a national class action on their common law claims would be manageable."); *Tylka v. Gerber Prods. Co.*, 178 F.R.D. 493, 498 (N.D. Ill. 1998) (denying certification of a nationwide class because "Plaintiffs fail to meet their burden and demonstrate that the nuances of 50 consumer fraud statutes and 50 common laws are manageable"). Ms. Carnegie has failed to show the similarities of state law which would justify certification of the plaintiff class as to those claims.

As a last resort, Ms. Carnegie argues that state-by-state variation may be resolved by sub-classing, but she has made no motion for the creation of sub-classes, and at any rate whether the inclusion of fifty sub-classes would improve manageability is an open question. If the laws of the fifty states all follow one of a small number of identical standards, Ms. Carnegie has not made any attempt to prove that this is the case. Judging from the cases

15

cited by the defendants, who do a much more thorough job of analyzing the question than the plaintiff, the state law which governs each of Ms. Carnegie's claims varies widely and would be extremely difficult to categorize.

A nationwide litigation class cannot be certified as to the state law claims in Counts III, IV, V, and VIII. Certification is withdrawn as to those counts.

IV.

The briefs in this case raise certain issues concerning the parties which do not relate directly to any particular count in the complaint. Both defendants argue that Ms. Carnegie has named defendants against whom she has no claim. Block alleges that H & R Block Eastern Tax Services is the only appropriate Block defendant, as it was the only Block entity which had any interaction with Ms. Carnegie. Beneficial makes a similar argument, stating that only Beneficial National Bank may properly be sued, and that the other Beneficial defendants are innocent victims of Ms. Carnegie's indiscriminate naming of defendants. At the pleading stage, a consumer plaintiff cannot be expected to express a complete understanding of the relationships among the holdings in a complex corporate structure. At this time, it is beyond the ability of both the plaintiff and this court to determine which Block entities and which Beneficial entities are ultimately responsible for the

actions at issue in this suit. Therefore, I decline to dismiss any defendants from the suit.

The defendants also point out that RAL agreements after 1996 included an arbitration clause. In his order of January 11, 1999, Judge Zagel ruled that these arbitrations were enforceable. Carnegie argues that this decision does not preclude reconsideration of the question, because at the time of that decision, the class was represented by counsel later held by the court to be deficient, and it would be improper to enforce a ruling against the class. While I agree with this argument, I also agree with Judge Zagel's reasoning in that order. The Seventh Circuit strongly favors enforcement of arbitration provisions, and has declined to override them even in far more adhesive circumstances than those surrounding the RAL transactions. *See, e.g., Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997); *Champ v. Siegel Trading Co., Inc.*, 55 F.3d 269 (7th Cir. 1995). Contrary to Carnegie's argument, the defendants' involvement in settlement proceedings over the last several years does not constitute an election of legal remedies and corresponding waiver of the right to arbitrate. The class in this case excludes those RAL customers whose contracts included agreements to arbitrate disputes arising from the transaction.

Finally, the defendants challenge Carnegie's ability to represent the class, alleging that the facts of her claim are

17

atypical. In particular, they point to her lack of reliance on deceptive advertising and her failure to read the RAL application before signing it. These attributes of the plaintiff's experience are examples of the type of individual variation which necessarily distinguishes class members from one another in every class action. No two individuals' claims will ever be identical; the question is whether the named plaintiff's claim "arises from the same event, practice, or course of conduct that gives rise to the claim of other class members and is based upon the same legal theory as other class claims." *Ringswald v. County of DuPage*, 196 F.R.D. 509, 512 (N.D. Ill. 2000). Carnegie's claim meets this standard. The defendants' arguments that Carnegie's history provide special problems for her breach of fiduciary duty and consumer fraud claims are mooted by the decertification of those claims. Carnegie has satisfied the typicality requirement and may serve as class representative.

ENTER ORDER

*Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: March 29, 2004