IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DECARLO TURNER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 98 C 2550 |
| BENEFICIAL NATIONAL BANK and BENEFICIAL TAX MASTERS, INC., | ) ) ) ) |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER

Before the court is the application of Daniel Harris for attorney's fees in connection with his representation of DeCarlo Turner, individually, in her case against Beneficial National Bank and Beneficial Tax Masters, Inc. ("Beneficial"). In February of 2005 the parties advised me that the matter had been settled. I dismissed the complaint but reserved jurisdiction over the question of attorney's fees. Mr. Harris now seeks total fees of $185,124 for services rendered by him personally and his employee, Anthony Valach. The actual damages sought in the complaint were $27.00. Under the settlement agreement, Beneficial is obligated to pay Ms. Turner $5,000.00 for a release of her claims and to pay her reasonable attorneys' fees. Beneficial does not contest the number of hours expended or Mr. Harris's hourly rate ($475.00). It does, however, contest the application on the ground that the fees sought are grossly excessive in view of the small amount at stake in the case. Beneficial also points out that Mr. Harris bills for Mr.

Valach's time at $190 per hour even though Mr. Valach was not admitted to the bar until after all services to Ms. Turner were completed and the application for fees was filed. A brief review of the history of this case and related class actions will serve to put the fee application in perspective.

In 1998, Mr. Harris filed a putative class action complaint on behalf of Ms. Turner against Beneficial and the national tax return preparation firm, H&R Block, Inc. (Block). The complaint sought relief for breach of contract, deceptive trade practice, the Truth In Lending Act, 15 U.S.C. § 1601 et seq. (TILA), and the Racketeer Influence and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. (RICO). Subsequently, the TILA claim was voluntarily dismissed.

Ms. Turner's case was one of a number of class actions that arose out of the procurement by Block for its customers of so-called income tax refund anticipation loans ("RAL's") from Beneficial. Her complaint alleged that the customers were not advised that Block had a financial interest in the loan fees nor were they told the actual cost to them of the RAL's. Certification has been sought for classes of such taxpayers who are now alleged to number more than 27,000,000. Much of the factual background and the procedural history of these cases is detailed in two published opinions, *Reynolds v Beneficial Nat. Bank.*, 288 F.3d 277 (7th Cir. 2002)("Reynolds") and *Reynolds v. Beneficial Nat. Bank*, 260 F. Supp.2d 680 (N.D.Ill. 2003).

Mr. Harris was one of a group of lawyers who asked the district court to approve a settlement of the class action cases on terms which gave class members only minimal damages (well under $100.00 per class member) but provided for payment of millions of dollars in fees for counsel. Another judge of this court approved the proposed settlement, but was reversed on appeal by the Seventh Circuit which observed that the representation of the class by class counsel "was almost certainly inadequate." *Reynolds*, 288 F.3d at 284. On remand, the case was reassigned to me. I held a fairness hearing on the settlement proposal and rejected it. The evidence revealed that class plaintiffs' counsel had failed to take any meaningful discovery on the merits and that the proposed settlement was not fair, adequate and reasonable. On April 15, 2003 I entered a memorandum opinion and order in which I held that class counsel (including Mr. Harris) had been inadequate representatives of the plaintiff class and would not be permitted to represent the class in further proceedings. *See Reynolds v. Beneficial Nat. Bank*, 260 F. Supp. 2d 680 (N.D.Ill. 2003). Thereafter, Ms. Turner decided to opt out of the proposed class and pursue her individual claims.

In his application, Mr. Harris alleges that he obtained "an excellent result" for his client. In his reply memorandum in support of the application, he relates how his "aggressive position" with respect to prejudgment interest taken in the draft

pretrial order hastened the disposition of the case, resulting in a payment to Ms. Turner much higher than the damages claimed in the complaint.

T. Robert Scarborogh, one of Beneficial's attorneys, filed a declaration in support of Beneficial's response to the fee application. Mr. Scarborough alleges that he and Mr. Harris discussed settlement multiple times throughout 2003 and 2004, but Mr. Harris refused to discuss any settlement outside of a six figure range. It was not until after Mr. Scarborogh set up a meeting with one of Mr. Harris's colleagues in January 2005 that Mr. Harris indicated a settlement was likely, and even then several weeks of negotiation were required to arrive at agreement on a $5,000.00 payment to Ms. Turner. On May 2, 2005, Mr. Harris filed his application for fees, alleging that Beneficial had refused to pay him more than $16,525.00 for his services to Ms. Turner. Beneficial argues that its decision to settle with Ms. Turner simply reflects an economic decision that a full-blown trial of a small stakes case based on a single RAL transaction could not be remotely cost-justified. It asks that I reduce the fee award sought to an amount reasonably commensurate with the value of Ms. Turner's case.

## DISCUSSION

The general rule in American state and federal courts is that, except for those cases that fall under a statute or contract which

authorizes the award of attorneys' fees, each party bears his own costs incurred in the prosecution or defense of a claim. *Matter of Sheridan*, 105 F.3d 1164, 1166 (7th Cir. 1997). The settlement agreement between the parties contains a valid contractual undertaking by Beneficial to pay Mr. Harris a "reasonable" attorney's fee. The issue here is how such a fee should be calculated in the circumstances of this case.

The starting point for determination of reasonable fees, the so-called lodestar amount, is calculated by multiplying the number of hours of work spent on the matter by the hourly market rates of the individuals. The lodestar amount is then subject to such adjustment as facts and circumstances may require. *Hensley v. Eckerhart*, 461 U.S. 424, 430 (1983); *Blanchard v. Bergeron*, 489, 494 (1989). Of paramount concern is whether the claimed hours were "reasonably expended." *Hensley, supra,* at 434 ("Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice is obligated to exclude such hours from his fee submission.").

Mr. Harris gives a number of reasons why an attorney's fee 37 times greater than his client's recovery and more than 6,800 times her actual loss is warranted here. I find none of his arguments persuasive. Mr. Harris cites *Hensley, supra,* for the proposition that "[G]iven the excellent result achieved for Ms. Taylor and

given defendant's promise to pay counsel his reasonable attorney's fees, counsel is entitled to payment in full for time spent on plaintiff's individual claim." He contends that he is entitled to be compensated at market rates for all time he and his employee spent on the matter without regard to whether the expenditure of time was reasonable and with no downward adjustment for time spent in advancing theories the court rejected. Neither the Supreme Court nor our court of appeals concurs in this view. What *Hensley* actually holds is that an attorney should not bill for his services without taking into consideration the amount of the claim and the results obtained. *Hensley*, 461 U.S. at 439n.3.

In *Strange v. Monogram Credit Card Bank of Georgia*, 129 F.3d 943 (7th Cir. 1997), counsel who had represented an individual client with minimal damages in a consumer credit case sought $21,743.75 in fees. I granted the request only to the extent of $3,000.00. The stated reason for the reduction was that "It was absurd for [counsel] to spend 123 hours to establish a $54 (or even $328) claim." The Seventh Circuit upheld the reduction in fees, stating that, "[the trial judge] took into account both the result [counsel] actually obtained and the maximum amount he could have hoped for . . . " *Strange*, 129 F.3d at 946.

Mr. Harris argues that he is not seeking fees for his work on behalf of the class, but only for the services provided to Ms. Turner in connection with her individual claim. The chart he

6

submits in his fee application refutes his argument. As an example, the first entry on the chart is for work done by Mr. Harris between June 27, 1997 and May 4, 1998. Under the rubric "Task" the chart states: "Meeting with client, preliminary research. Drafting complaint." The time allocated to this work is 31.75 hours which, at Mr. Harris's claimed hourly rate, would alone generate $15,081.25 in fees. Clearly, Ms. Turner's individual claim was not uppermost in Mr. Harris's mind when he interviewed her, researched the law, and drafted a class action complaint. The same holds true for the 36.05 hours that Mr. Harris spent in 2003 "drafting Motion for Partial Summary Judgment and related research and planning", not to mention 43.3 hours spent on additional summary judgment papers and 23.2 hours spent on a response to a motion to dismiss, all in 2003 and 2004.

The legal work for which counsel seeks fees can only be justified on the basis of what was at stake for Ms. Turner individually and by the result obtained for her. Mr. Harris also seeks fees for Mr. Valach's services. Mr. Harris represents that Mr. Valach graduated from law school in 2004, and that the market rate for lawyers who graduated in that year, as evidenced by the billing of Beneficial's own counsel, is $190.00 per hour. While an affidavit in support of the application does state in passing that Mr. Valach "will be sworn in to the Illinois Bar in May 2005", the fee application itself does not dwell on his status at the time

he performed services. The chart shows that Mr. Valach worked on the case from October 9, 2002 through April 8, 2005. Obviously, he was acting as a paralegal or student intern rather than as a lawyer, and the market rate for 2004 graduates already admitted to the bar is irrelevant. The chart of services and the petition for fees are, in that respect, misleading. For the foregoing reasons I find the pending fee application excessive.

Nevertheless, there was an offer on the table to Mr. Harris from Beneficial which in my view would have compensated him reasonably for the services he did perform on behalf of Ms. Turner. The offer was a payment in the amount of $16,525.00. I regard that amount as a far more realistic assessment of the market value of Mr. Harris's services in this case than the $185,124.00 he seeks.

I award $16,525.00 in fees to Mr. Harris for all of the services performed by him and Mr. Valach on Ms. Turner's behalf.

ENTER ORDER:

*Elaine E. Bucklo*
**Elaine E. Bucklo**
United States District Judge

Dated: December 15, 2005